## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| GINGER SNOW and SUSAN CAMMPBELL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. |
| CIRRUS EDUCATION GROUP, INC. d/b/a CIRRUS CHARTER ACADEMY, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Ginger Snow and Susan Campbell, by and through undersigned counsel, file this Complaint and Demand for Jury Trial against Defendant Cirrus Education Group, Inc., and states as follows:

### JURISDICTION

### 1.

This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., § 2000e ("Title VII"); the Civil Rights Act of 1991; and 42 U.S.C. § 1981a.  Specifically, Plaintiffs bring this action alleging:

(a) unlawful discrimination based on their race in violation of Title VII;

(b) unlawful retaliation in violation of Title VII;

(c) unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981a; and,

(d) negligent infliction of emotional distress.

As such, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a).

2.

The venue of this action is properly in the United States District Court for the Middle District of Georgia, Macon Division, pursuant to 28 U.S.C. § 1391(b) and Local Rules 3.4, because a Plaintiff resides in the State of Georgia and this judicial district/division and because a substantial part of the events or omissions giving rise to this lawsuit occurred in this district/division.

## ADMINISTRATIVE PROCEDURES

3.

Plaintiffs have fulfilled all conditions necessary to proceed with this cause of action under Title VII. Plaintiff Snow filed a charge of discrimination with the EEOC (charge number 410-2017-02093). The EEOC issued its Notice of Right to Sue on March 3, 2017. Plaintiff Snow timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

Plaintiff Campbell filed a charge of discrimination with the EEOC (charge number 410-2017-02092). The EEOC issued its Notice of Right to Sue on March 17, 2017. Plaintiff Campbell timely files this action within ninety (90) days of receipt of the Notice of Right to Sue form the EEOC.

## PARTIES

### 4.

Plaintiff Ginger Snow is a white female citizen of the United States and the State of Georgia.  Plaintiff resides in Monroe, Georgia, which is within this judicial district.  She was formerly employed by Cirrus Education Group, Inc. as the SPED Coordinator and Testing Coordinator at the Cirrus Charter Academy in Macon, Georgia.

### 5.

Plaintiff Susan Campbell is a white female citizen of the United States and the State of Georgia. Plaintiff resides in Thomaston, Georgia. She was formerly employed by Cirrus Education Group, Inc. as a teacher, Instruction Coach, RTI Coordinator, PBIS Coordinator and Testing Coordinator at the Cirrus Charter Academy in Macon, Georgia.

### 6.

Defendant Cirrus Education Group, Inc. for profit entity formed under the laws of the State of Georgia. At all times relevant to the allegations in

this Complaint, Defendant operated the Cirrus Charter Academy located at 1870 Pio Nono Avenue, Macon, Georgia and employed fifteen (15) or more employees and is therefore covered under Title VII. Defendant may be served by delivering a copy of the Summons and Complaint to its registered agent Sheldon Hart, 821 Walnut Street, Macon, Georgia 31201.

## FACTUAL ALLEGATIONS

7.

At all times relevant to this Complaint, Plaintiffs were employed by and were employees of Defendant as defined under Title VII.

8.

Plaintiff Snow is a white woman with over ten (10) years of experience in education and special education. Plaintiff Snow was hired by Defendant in July of 2016 as the SPED Coordinator and Testing Coordinator for its charter school in Macon, Georgia.

9.

Plaintiff Campbell is a white woman with over fifteen (15) years of experience in education. Plaintiff Campbell was hired by Defendant in July of 2016 as a teacher but was promoted to RTI Coordinator, PBIS Coordinator, Testing Coordinator and Instruction Coach for its charter school in Macon, Georgia.

10.

Ashanti Johnson is an African-American female and is the CEO of Cirrus Education Group, Inc. and the Superintendent of the Cirrus Charter Academy.

11.

Gail Fowler is an African-American female and is the Principal of the Cirrus Charter Academy.

12.

Plaintiffs were two of five white employees at Cirrus Charter Academy. Cirrus Charter Academy employed an additional fifty-five (55) employees, all of whom were African-American.

13.

The Cirrus Academy Charter School Employee Handbook provides that the Plaintiffs' workplace should be free from discrimination and harassment based on among other things, an employee's race.

14.

The Cirrus Academy Charter School Employee Handbook also provides that the school Principal shall develop a Complaint Procedure for employees who believe they have been subjected to discrimination and/or

harassment. In effect, there was no procedure other than orally reporting the discrimination and/or harassment to the Principal.

15.

Plaintiffs began their employment at Cirrus Charter Academy very successfully and were given more responsibility as the 2016/2017 school year progressed which exceeded the job descriptions in their employee/teacher contracts.

16.

Plaintiff Snow earned approximately $58,000 per year in salary; and Plaintiff Campbell earned approximately $60,000. Both Plaintiffs are fully State of Georgia certified teachers and have Masters Degrees in Education.

17.

Plaintiffs reported directly to the Principal of the school.

18.

In approximately November through December of 2016 the Plaintiffs began receiving racially charged text messages calling Plaintiffs – "white bitches," "crackers," "Hitler lovers," and "white nazis." The text messages also stated that the Cirrus Charter Academy would be an "all black school" once "we get the whites out," and "black power."

19.

The text messages also included threats of violence against the Plaintiffs and their families if they reported the harassment. Perhaps most disturbingly, the texts included cell phone photographs of Plaintiffs in school during school hours – while anonymous the texts were clearly being sent by employees at the Cirrus Charter Academy.

20.

Plaintiffs reported the racially charged harassment to the Principal, who took no action other than to refer the Plaintiffs to the Superintendent Ashanti Johnson.

21.

Another white female teacher, Diana Humble, was also receiving racially charged and harassing texts and likewise reported the harassment.

22.

In January of 2017, Plaintiffs again reported the racial harassment by forwarding via email some of the racially harassing text communications to Cirrus Superintendent Johnson, Cirrus attorney Boone Smith, and Cirrus Principal Gail Fowler – again no action was taken to protect Plaintiffs from the racial harassment.

23.

After reporting the racial harassment and threats of physical harm to the Cirrus Charter Academy leadership and having no actions or protections put in place, the Plaintiffs requested to address the School Board – which they had been told in their employee orientation was the last place they could address their complaint if their chain of command did not satisfactorily address the complaints of discrimination and harassment.

24.

In violation of Cirrus Charter Academy policy, the attorney for the school informed the Plaintiffs they would not be allowed to address their complaints of racial discrimination and harassment to the Board.

25.

Plaintiffs also learned that they were being paid less than their African-American co-workers who held similar positions even though Plaintiffs had more experience in education, held Master's Degrees in Education, and, in some cases held more certifications than their higher paid African-American co-workers.

26.

After complaining about and reporting the race based harassment and pay issues to leadership at Cirrus Charter Academy, Plaintiffs began to

experience retaliatory conduct from their employer. Plaintiffs reporting of and complaining of the race based harassment and discrimination in pay based on race constituted protected activity under Title VII and 42 U.S.C. §1981.

27.

Specifically, Plaintiffs endured the following instances of retaliation, but not limited to:

- Plaintiffs personal possessions in their offices/classrooms were taken and destroyed by Cirrus Charter Academy personnel;

- Plaintiff Campbell was given additional duties and offered a raise in salary; however, after reporting the racial harassment the raise was never given;

- Plaintiffs were told to stop complaining and "just do your job;"

- Plaintiffs were harassed by representatives of the administration for being "trouble makers" and told to drop their complaints;

- Had their private conversations and telephone conversations eavesdropped by school administrators through the school telephone system;

- Plaintiffs were told by school administrators they could not speak to or communicate with each other (to discourage additional

reporting and complaining) and were told disciplinary action would be taken against them;

- Plaintiffs' access to school leadership regarding racial harassment complaints was restricted;

- Representatives of school leadership contacted Plaintiffs' cell phone providers claiming the phones were school property and demanding all records;

- Defendant caused Plaintiff Campbell to be arrested without cause;

- Plaintiffs were told their careers would be taken away if they continued to report racial harassment and discrimination and that school leadership would call area schools and ruin Plaintiffs' representations.

28.

These examples of the Defendant's racist, discriminatory and harassing conduct, and retaliation are not exhaustive of the intentional harassment and intimidation leveled at Plaintiffs; however, these acts are illustrative of why Plaintiffs were in a hostile work environment based on their race and engaging in protected activity.

29.

As the racial discrimination, harassment and retaliation continued and intensified Plaintiffs began having trouble sleeping, hair loss, weight loss and having episodes of anxiety and paranoia at work.

30.

Both Plaintiffs have been forced to seek medical care and counseling for illnesses and symptoms related directly to the harassment and retaliation in their workplace.

31.

As a direct and proximate result of the racial harassment, racial discrimination, and retaliation Plaintiffs have suffered emotional distress.

32.

Plaintiffs continue to be retaliated against by the Defendant in their search for teaching jobs as Defendant has carried through on their threat to keep Plaintiffs from finding other employment.

33.

Ultimately, both Plaintiffs have been wrongly terminated from their employment because of their reporting and complaining of racial discrimination.

## CLAIMS FOR RELIEF

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

34.

Plaintiffs incorporate each and every paragraph above as if fully stated herein.

35.

Defendant discriminated against Plaintiffs based on their race, by subjecting Plaintiffs to harassment, discrimination and different terms and conditions of employment due their being white women in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. 1981a.

35.

Defendant, created a work environment hostile to Plaintiffs based on their race and with no available internal remedies.

36.

Defendant has willfully and wantonly disregarded Plaintiffs' rights, and Defendant's discrimination against Plaintiffs was undertaken in bad faith.

37.

The effect of the conduct complained of herein has been to deprive Plaintiffs of an equal employment opportunity, and has otherwise affected their status as an employee because of race.

38.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiffs have been made the victims of acts that have adversely affected their psychological and physical well-being.

39.

Plaintiffs have suffered damages because of the unlawful discrimination by Defendant and are entitled to compensatory damages, lost wages, back pay, lost benefits and loss of future income.

## COUNT II: CLAIMS FOR RELIEF UNDER THE CIVIL RIGHTS ACT OF 1991 AND 42 U.S.C. §1981a

40.

Plaintiffs incorporate each and every paragraph above as if fully stated herein.

41.

Defendant discriminated against Plaintiffs, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiffs of equal employment

opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiffs.

42.

Plaintiffs thus seek compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. §1981a(a)(1).

**COUNT III: RETALIATION IN VIOLATION OF TITLE VII**

43.

Plaintiffs incorporate each and every paragraph above as if fully stated herein.

44.

Plaintiffs engaged in statutorily protected activity in relation to the race based discrimination and harassment they were subjected to while employed by Defendant.

45.

Plaintiffs' complaints to their supervisor and complaints to Defendant's CEO and attorney constituted protected conduct under Title VII.

46.

Defendant retaliated against Plaintiffs by, but not limited to, the examples as set forth in paragraph 27 above.

47.

Defendant's retaliatory actions against Plaintiffs were in violation of Title VII.

48.

Defendant willfully and wantonly disregarded Plaintiffs' rights, and Defendant's retaliation against Plaintiffs was undertaken in bad faith.

49.

Because of Defendant's retaliatory actions against Plaintiffs, they have suffered lost compensation and benefits, lost future earnings, suffered emotional distress, inconvenience, humiliation and other indignities.

50.

Plaintiffs have suffered damages because of the unlawful retaliation by Defendant and is entitled to all damages allowed by law, including attorney's fees, costs of litigation and compensatory damages.

## COUNT IV. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

51.

Plaintiffs incorporate each and every paragraph above as if fully stated herein.

52.

Defendant through its conduct has directly and proximately caused the Plaintiffs great emotional distress for which Plaintiffs have sought and received medical treatment.

53.

The Defendant's knew or should have known that the racial discrimination, harassment, threats of personal harm to Plaintiffs and their families and retaliation as described herein, would cause Plaintiffs emotional distress.

54.

As a result of Defendant's conduct and the emotional harm suffered by Plaintiffs, Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

(1) General damages for mental and emotional suffering caused by the Defendant's misconduct;

(2) Punitive damages based on the Defendant's willful, malicious, intentional, and deliberate acts including ratification and approval of said acts;

(3) Special damages and/or liquidated damages for lost wages and

benefits and prejudgment interest thereon;

(4) Reasonable attorney's fees and expenses of litigation;

(5) Prejudgment interest at the rate allowed by law; and,

(6) All other relief to which she may be entitled by law.

**A TRIAL BY JURY OF TWELVE IS DEMANDED**.

Respectfully submitted this 31st day of May 2017.

**NEY HOFFECKER PEACOCK & HAYLE, LLC**

_____ /s/ Charles Hoffecker _____
Charles Hoffecker
Georgia Bar No.: 359615
William Brent Ney
Georgia Bar No.: 542519
Attorneys for Plaintiffs

1360 Peachtree Street, NE
Suite 1010
Atlanta, Georgia 30309
Ofc. 404-885-7576
Fax 470-225-6646
chad@nhphlaw.com
william@nhphlaw.com

I hereby certify that this pleading was submitted in Times New Roman 14pt
font as required by the Local Rules of this Court.